FILED
2013 Nov-19  PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **RACHEL KIRBY,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:12-CV-3472-VEH** |
| | ) |
| **CAROLYN W. COLVIN,[1]** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Rachel Kirby brings this action under 42 U.S.C. § 405(g), Section

205(g) of the Social Security Act.  She seeks review of a final adverse decision of the

Commissioner of the Social Security Administration ("Commissioner"), who denied

her application for Child Insurance Benefits and Supplemental Security Income

("SSI").[2]  Ms. Kirby timely pursued and exhausted her administrative remedies

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn
W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit.
("Any actions instituted in accordance with this subsection shall survive notwithstanding any change
in the person occupying the office of Commissioner of Social Security or any vacancy in such
office.").

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks
disability insurance benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations
exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to

available before the Commissioner.  The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Rachel Kirby was 21 years old at the time of her hearing before the Administrative Law Judge ("ALJ").  (Tr. 54).  She has completed the 11th grade. (Tr. 54).  She has no past relevant work.  (Tr. 45).  She claims she became disabled on January 31, 2007, due to: anxiety; morbid obesity; depression; irritable bowel syndrome (IBS); and a learning disability.  (Tr. 153).  Her last period of work ended on October 31, 2006.  (Tr. 153).

On January 14, 2009, Ms. Kirby protectively filed a Title II application for a period of disability and DIB.[4]  (Tr. 142).  She also protectively filed a Title XVI application for SSI on December 19, 2008.  (Tr. 139).  On March 19, 2009, the Commissioner initially denied these claims.  (Tr. 34).  Ms. Kirby timely filed a written request for a hearing on April 9, 2009.  *Id.*

The ALJ conducted a hearing on the matter on October 25, 2010.  *Id.*  On

_____

the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[4]The Disability Insurance Benefits were applied for in the form of Child Insurance Benefits (20 CFR404.350(a)(5)).

November 30, 2010, he issued his opinion concluding Ms. Kirby was not disabled and denying her benefits. (Tr. 34-47). Ms. Kirby timely petitioned the Appeals Council to review the decision on February 2, 2011. (Tr. 21). On August 29, 2012, the Appeals Council issued a denial of review on her claim. (Tr. 1).

Ms. Kirby filed a Complaint with this court on September 27, 2012, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on January 14, 2013. (Doc. 5). Ms. Kirby filed a supporting brief (Doc. 7) on March 1, 2013, and the Commissioner responded with her own (Doc. 9) on April 4, 2013. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to

---

[5]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, current through October 18, 2013.

4

disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)    whether the claimant can perform his or her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    The claimant had not attained age 22 as of January 31, 2007, the alleged onset date of her disability (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).  (Tr. 36).

2.    The claimant had not engaged in substantial gainful activity since January 31, 2007, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).  (Tr. 36).

3.    The claimant had the following medically determinable impairments: morbid obesity; osteoarthritis of the lumbar spine and knees; hypertension; major depressive disorder, recurrent, chronic; social phobia, generalized; bulimia nervosa, purging type; schizoid personality disorder; personality disorder, not otherwise specified, mixed with avoidant and borderline personality traits; borderline intellectual functioning; history of acne keloidalis nuchae and folliculitis; history of fall with head injury and laceration; history of bacterial endocarditis status post mitral valve repair in the distant past (20 CFR 404.1520(c)

6

and 416.920(c)).  (Tr. 36).

4.    The claimant did not have an impairment or combination of impairments that meets or   medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 38).

5.    The claimant had the residual functioning capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she requires a sit/stand option allowing her to change position at will. The claimant has moderate restrictions in her ability to respond appropriately to supervisors, coworkers, customers and other members of the public.  She also has moderate limitations in terms of her ability to deal with changes in routine work setting and to maintain social functioning, activities of daily living, and attention, concentration, persistence and pace throughout an eight-hour work day with customary breaks.   She is moderately limited in her ability to understand, remember, and carry out simple one - and -two-step instructions and in her ability to use judgment in work-related decisions.  The claimant can understand, remember, and carry out simple instructions over the course of an eight hour day with routine breaks.  Her contact with coworkers, supervisors, and the public should be casual and non-confrontational,

and changes in the claimant's workplace should be introduced slowly.

She experiences pain at times up to the moderate level.  (Tr. 40).

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).  (Tr. 45).

7. The claimant was born on July 13, 1989 and was 17 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).  She was 19 years old on December 19, 2008, when she filed her application for Supplemental Security Income (SSI).  (Tr. 45).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).  (Tr. 46).

9. Transferability of job skills was not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).  (Tr. 46).

10. Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).  (Tr. 46).

11. The claimant had not been under a disability, as defined in the Social Security Act, from January 31, 2007, through the date of this decision

(20 CFR 404.350(a)(5), 404.1520(g), and 416.920(g)). (Tr. 47).

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Kirby urges this court to reverse the Commissioner's decision to deny her benefits on the following grounds: (1) the ALJ failed to fully and fairly develop the record by not developing the medical evidence regarding the plaintiff's osteoarthritis of the lumbar spine and knees to a degree that provided sufficient medical evidence to make a determination as to disability; and (2) the ALJ erred in failing to assess, on a function by function basis, the plaintiff's "specific ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch-abilities in which plaintiff could reasonably be expected to experience limitations given her morbid obesity and

---

[6]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

allegations of osteoarthritis of the lumbar spine and knees." (Doc. 1).

In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standards.

## I.   THE ALJ'S CONCLUSION THAT MR. KIRBY WAS NOT DISABLED IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Ms. Kirby maintains that the ALJ's decision is not supported by substantial evidence because the ALJ (1) failed to fully and fairly develop the record by not obtaining a consultative x-ray examination, and (2) failed to indicate Ms. Kirby's exertional and postural abilities on a function-by-function basis.  (Doc. 7 at 11-15).

The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). "Even if the evidence preponderates against the [Commisioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Ms. Kirby bears the burden of proving that she is disabled. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Ms.

Kirby did not satisfy that burden.  This court finds that the ALJ's determination that Ms. Kirby was not disabled is supported by substantial evidence.

## A.    THE ALJ FULLY AND FAIRLY DEVELOPED THE RECORD.

In his decision, the ALJ described in detail Ms. Kirby's treatment records and the inconsistencies between her statements and the residual functional capacity assessment that diminished the credibility of her allegations of disability. (Tr. 36-41). When plaintiff was six years old she underwent surgery to repair damage to her mitral valve caused by ineffective endocarditis.  (Tr. 200-201).  The ALJ determined there is no evidence of any continuing heart problem.  (Tr. 37).  When the plaintiff was 15 years old she was treated for skin lesions on the back of her head.  (Tr. 226).  The ALJ also found this condition as not a presently disabling impairment.  (Tr. 37).

Medical records show that at the age of 20 the plaintiff was 5'3" tall and weighed 418 pounds.  (Tr. 302).  Her measurements indicated a body mass index of 74, and she was diagnosed with morbid obesity.  (Tr. 37, 295).  The ALJ agreed with the medical findings on the plaintiff's morbid obesity and noted that she had been given counseling regarding diet and exercise.  (Tr. 37).  The ALJ also discussed the plaintiff's treatment at the Calhoun Cleburne Mental Health Center.  (Tr. 37).  The plaintiff asserts that in May of 2005 she deliberately cut her arm in order to get checked out of school.  (Tr. 37).  The school authorities perceived this action as a

suicide attempt and referred her to the mental health center.  (Tr. 37).  The plaintiff attended one counseling session with therapist, Judith Thompson, where she denied any suicidal thoughts and was diagnosed with depressive disorder.  (Tr. 219).  Ms. Thompson described the plaintiff's progress as "good."  (Tr. 219).  The plaintiff has had no further mental health treatment since June of 2005.  (Tr. 37).

On March 6, 2009, Dr. Robert Storjohann, PhD, conducted a consultative psychological evaluation of the plaintiff.  The plaintiff reported to Dr. Storjohann that she attributed her depression to being picked on by her classmates due to her weight, her clothes, and being slow in school.  (Tr. 263).  The plaintiff also indicated that she engages in binge eating and self-induced vomiting on a daily basis.  (Tr. 263).  She described feelings of depression and anxiety, including low self-esteem, attention and concentration problems, feelings of helplessness, hopelessness, and worthlessness, and recurrent thoughts of suicide.  (Tr. 38).  She also described health problems, including morbid obesity, headaches, irritable bowel syndrome with frequent bouts of constipation, and chronic pain in her back and joints.  (Tr. 38).

Dr. Storjohann described the plaintiff's behavior as "rather odd, aloof, withdrawn, quite dysphoric, and socially uncomfortable," but noted that she demonstrated no memory deficits, and her thought processes were logical, coherent, and goal-directed, without loose associations or confusion.    (Tr. 38-39).

Additionally, Dr. Storjohann determined that the plaintiff's judgment and insight were grossly intact and sufficient to allow her to make acceptable work decisions and manage her own financial affairs.   (Tr. 38).   He diagnosed major depression, recurrent, severe, without psychotic features; social phobia; bulimia nervosa, purging type; schizoid personality disorder; and personality disorder, not otherwise specified, with prominent avoidant and borderline personality traits.   (Tr. 38).   Based on the results of this evaluation, Dr. Storjohann determined that the claimant appeared to have moderate deficits in her ability to understand, carry out, and remember instructions in a work setting, as well as moderate deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting.   (Tr. 38).   Dr. Storjohann's findings were supported by Dr. Robert Estock's consultive psychiatric review technique form (PRTF) and mental residual functional capacity assessment.   (Tr. 43).   Dr. Estock determined that plaintiff's mental impairments caused moderate limitations in her activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace, with no episodes of decompensation.   (Tr. 43).

The ALJ gave significant weight to Dr. Storjohann's and Dr. Estock's findings, and found the plaintiff's impairments not to be of listing level severity.   (Tr. 38).   The ALJ found that the plaintiff had moderate restrictions in activities of daily living, in

13

social functioning, and in concentration. (Tr. 39). Because the plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the applicable listing criteria (paragraph B) are not satisfied. (Tr. 40). The ALJ also noted that the plaintiff's primary physical impairment is obesity, which no longer has a specified medical listing. (Tr. 38).

The ALJ next found that the plaintiff has a residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she requires a sit/stand option allowing her to changes position at will. (Tr. 40). In making this finding, the ALJ complied with the requirements of 20 CFR 404.1529 and 416.929, and SSRs 96-4p and 96-7p by considering all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence. (Tr. 40-41).

The ALJ considered all of the plaintiff's testimony including that she could only stand for 15-30 minutes at a time and can only walk for about two minutes before being too tired or in pain to continue. (Tr. 41). This evidence was weighed against the residual functional capacity assessment (RFC) findings. The ALJ noted that the inconsistences between the RFC and the plaintiff's testimony showed that the plaintiff's statements concerning the intensity, persistence, and limiting effects of her

symptoms were not credible.  (Tr. 41).  Specifically, in the report, the plaintiff indicated she could walk for two to five minutes before needing rest, but went shopping every other day for about one hour. (Tr. 41).  She also stated that she tried exercising for 60 minutes a day. (Tr. 41).  The ALJ determined that the degree of physical activity involved in shopping and exercising are inconsistent with an inability to walk for longer than two to five minutes at a time.  (Tr. 42).

Additionally, the ALJ reviewed evidence regarding the plaintiff's alleged knee, back, and leg pain and found the allegations had some credibility given the plaintiff's diagnoses of osteoarthritis and morbid obesity.  (Tr. 41).  However, when Dr. Heilpern  conducted an evaluation, the plaintiff demonstrated a full range of motion in her back and all her joints except her hips and knees.  (Tr. 41-42).  Dr. Fava examined Ms. Kirby and concluded that the accumulation of abundant fatty tissue is what impeded the full range of movement in the plaintiff's hips and knees.  (Tr. 41). Based on an objective review of the above reported activities of daily living, the ALJ found the plaintiff's hearing testimony and Dr. Fava's evaluation of the plaintiff's functional abilities (can only lift up to 3 pounds) to be very inconsistent and inconceivable.  (Tr. 42).  The ALJ found the extreme limitation on lifting and carrying to be against the weight of all the medical evidence, including Dr. Fava's own physical examination, and the plaintiff's reported  activities of daily living. (Tr.

43).   As a result, the ALJ gave significant weight to Dr. Heilpern's findings and

determination that the plaintiff could perform a full range of medium work.  (Tr. 43).

Ultimately, the ALJ noted the consistencies between Dr. Heilpern's assessment and

the medical evidence, but found the plaintiff only capable of a reduced range of light

work.  (Tr. 43).

Lastly, the ALJ considered the findings of the vocational expert to determine

whether there are jobs that exist in significant numbers in the national economy that

the plaintiff can perform.  (Tr. 46).  The vocational expert testified that, given that the

plaintiff is only capable of light work with a sit/stand option, she could perform the

occupations of gate tender, egg packer, factory hand worker, and nut sorter.  (Tr. 46).

Such work exists in significant number in the national economy.  (Tr. 46).  Thus, the

ALJ found that the plaintiff is "not disabled."  (Tr. 46).

The ALJ's finding is supported by substantial evidence, including Ms. Kirby's

treatment history, Ms. Kirby's treating physician's findings, the findings of

consultative examiner Dr. Fava, and the vocational expert's findings.  (Tr. 23-31).

The ALJ clearly set forth Ms. Kirby's abilities and limitations in the decision.  (Tr.

28).  Given the depth and explicitness of the ALJ's considerations, there is substantial

evidence that the ALJ fully and fairly developed the record.

**B.    THE ALJ WAS NOT OBLIGATED TO ORDER A SECOND CONSULTATIVE EXAMINATION.**

Ms. Kirby argues that the ALJ should have developed the record by obtaining a second consultative examination that examined x-rays of her lumbar spine and knees. (Doc. 7 at 12).  She contends that the ALJ's failure to order x-rays shows that the record was not fully and fairly developed because an x-ray may have provided additional insight into her osteoarthritis of the lumber spine and knees.

However, a consultative examination only is warranted "where the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the claimant's application]." 20 C.F.R. §§ 404.1519a(b), 416.919a(b).  An ALJ is not required to order a consultative examination when the record contains sufficient evidence to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). A consultative examination need not be obtained to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's findings. *See Holladay*, 848 F.2d at 1210.

Here, Ms. Kirby has failed to show that a second consultative examination that would examine x-rays was required for the ALJ to make an informed decision about

17

her limitations. (Doc. 7 at 11-14). The substantial evidence discussed above - including the medical records from the plaintiff's treating physicians and the consultative examiners (Tr. 257-61, 263-80, 281-88, 289-92) -  shows that the ALJ had sufficient evidence to make an informed decision as well as supports the ALJ's conclusions that Ms. Kirby's impairments are not disabling to the degree which she contends**.**

### C.   THE ALJ'S RFC FINDING CONSTITUTES A FUNCTION-BY-FUNCTION ASSESSMENT OF THE PLAINTIFF'S ABILITY TO DO WORK-RELATED ACTIVITIES.

The plaintiff finally argues that the Commissioner committed reversible error because the ALJ failed to indicate Ms. Kirby's exertional and postural abilities on a function-by-function basis. (Doc. 7 at 15). Ms. Kirby supports her argument with a case from the Northern District of New York that is not binding on this court. (Doc. 7 at 15). The applicable regulation states:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *1.

An ALJ complies with the function by function assessment requirements of

18

SSR 96-8p by first assessing the plaintiff's functional limitations and restrictions, and then expressing the plaintiff's residual functional limitations in terms of exertional levels. *See Castel v. Comm'r of Soc.* Sec., 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007);[7] *see also Bailey v. Astrue, 5:11-CV-3583-LSC, 2013 WL 531075 (N.D. Ala. Feb. 11, 2013).*[8]   To properly assess a plaintiff's functional limitations and restrictions the ALJ must consider all of the relevant evidence, including:

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

S.S.R. 96-8p at *4-*5.  The ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to show that the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005); *see also Castel*, 355 F. App'x  at 263.

---

[7]Although unpublished Eleventh Circuit cases are not controlling, this court nevertheless finds these cases persuasive and adopts their reasoning.

[8]*Bailey v. Astrue* is not controlling, but this court finds the case to be persuasive and adopts its reasoning.

A review of the record indicates that the ALJ made a proper function-by function analysis before determining Ms. Kirby's functional capacity. In this case, the ALJ noted both Dr. Heilpern's and Dr. Fava's findings that addressed Ms. Kirby's ability to sit, stand, walk, lift, carry, push, and manipulate in the findings. (Tr. 40-43). Dr. Heilpern's findings reflected that Ms. Kirby could perform a full range of medium work. (Tr. 43). Dr. Fava found that Ms. Kirby could perform work related activities, such as sitting, standing, walking, and traveling. (Tr. 43). Additionally, Ms. Kirby stated that she performed house work, cooked, took care of her dog, attempted exercising 60 minutes a day, and went shopping every other day for about an hour. (Tr. 39). These findings are consistent with the ALJ's ruling and strongly indicate that the ALJ considered the evidence as a whole in making the finding that Ms. Kirby had the residual functional capacity to perform light work[9] with a sit/stand option. The ALJ performed a proper RFC function analysis, based on substantial evidence, and the court will defer to his conclusions.

---

[9]SSR 83-10 defines light work as: lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. SSR 83-10, 1983 WL 31251, at *5.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision is due to be **AFFIRMED**.

**DONE** and **ORDERED** this the 19th day of November, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge